**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jennifer E. Smith | : | |
| | : | |
| Plaintiff, | : | Case No. 2:10-cv-1124 |
| | : | |
| v. | : | Judge Frost |
| | : | Magistrate Judge Deavers |
| Ohio Legal Rights Service | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS COUNTS II AND III
AND PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES**

Although Defendant Ohio Legal Rights Service (OLRS) has been established by state statute as a state agency, Plaintiff argues there is insufficient support for characterizing OLRS as an arm of the state thus entitling it to Eleventh Amendment immunity. OLRS's status as an arm of the state cannot be denied.

As will be demonstrated below, not only was OLRS established by state law, but, in addition, among other things, its Commission is appointed by state officials, it submits a budget to the State General Assembly for its operations, it receives State general revenue funds, all aspects of its revenue and expenditures are handled through the State Office of Budget and Management, it must seek State Controlling Board approval to increase its spending authority, it submits annual reports to the Governor, the State indemnifies its employees who have acted within the scope of their employment, and it is subject to directives of the Ohio Department of Administrative Services and the Office of Budget and Management. OLRS has all the indices of an arm of the State of Ohio.

1. **Criteria for establishing that OLRS is an arm of the state**

That OLRS is an arm of the state is supported by a review of the four criteria generally utilized for determining whether an entity is properly characterized as an arm of the state for Eleventh Amendment immunity purposes. Those criteria are set forth in *Lowe v. Hamilton County Department of Job and Family Services*, 610 F.3d 321, 325 (6th Cir. 2010):

> 1) the State of Ohio's potential legal liability for judgment against the entity;
>
> 2) the language referencing the entity and degree of state control over the entity;
>
> 3) whether state or local officials appoint the entity's board members; and
>
> 4) whether the entity's functions are within the traditional purview of state or local government.

*Id.* at 321-332.

2. **Application of the *Lowe* criteria**

In adopting the criteria above, the *Lowe* court framed its analysis at the outset as follows: "Whether HCJFS is immune from suit thus turns on whether it is properly characterized as a political subdivision (and thus not immune) or an arm of the state (and thus immune)." *Id.* at 325. Accordingly, it is important to recognize the difference between the entity in that case and Ohio Legal Rights Service. In *Lowe,* there were many indications that the Hamilton County Department of Job & Family Services (HCJFS) was, indeed, a county entity – a political subdivision. The court's careful review of the four criteria aided it in determining whether HCJFS was, indeed, a political subdivision or was an arm of the state. In the case at bar, there really is no dispute that, as between political subdivision and arm of the state, OLRS can be categorized only as an arm of the state.

The first point of support for this conclusion is state statute, which defines "state" and "political subdivisions" as follows:

2

>　(B) "State" means the state of Ohio, including but not limited to, the general assembly, the supreme court, courts of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state of Ohio. **"State" does not include political subdivisions.**
>
>　(C) "Political subdivisions" of the state means municipal corporations, townships, counties, school districts, and all other bodies corporate and politic **responsible for governmental activities only in geographical areas smaller than that of the state.**

O.R.C. §109.36(B) and (C). Emphasis added. See also O.R.C. §2744.01(F) and (I). There is nothing in the statute creating OLRS to support a finding that OLRS is responsible for governmental activities "only in geographical areas smaller than that of the state," as was the Defendant in *Lowe*. This conclusion is supported by the attached Declaration of OLRS Executive Director Michael Kirkman (Kirkman Declaration).[1] Thus, the broad question, as to whether OLRS is a political subdivision or an arm of the state, can be resolved, as a matter of law, only in favor of finding OLRS an arm of the state.

　　Moreover, a review of each of the *Lowe* criteria also supports a finding that OLRS is an arm of the state and, thus, entitled to Eleventh Amendment immunity.

　　　　a. **The State of Ohio's potential legal liability for judgment against the entity**

　　The first of the *Lowe* criteria is a determination as to the state's "potential legal liability for a judgment against the defendant." *Lowe,* at 325. The court characterized this criterion as the "foremost" of the four factors. It cannot be disputed that the state of Ohio is potentially liable for a judgment against OLRS. There is no other entity that would be available to pay a judgment against OLRS.

---

[1] When a Rule 12(b)(1) motion is accompanied by evidentiary support, it is not converted into a motion for summary judgment. *Ernst v. Rising*, 427 F.3d 351, 372 (6th Cir. 2005).

3

Several facts support this conclusion. For example, OLRS prepares and submits a budget to the General Assembly for its operation. (Kirkman Declaration, ¶6) OLRS is included in the state's biennial budgets, as approved by the Ohio General Assembly, and receives General Revenue Funds from the State. (Kirkman Declaration, ¶9). It must go to the State's Controlling Board to increase its spending authority. (Kirkman Declaration, ¶12). OLRS does not issue checks to its vendors; rather, checks are issued by the state's Office of Budget and Management. (Kirkman Declaration, ¶14). Mr. Kirkman specifically testifies that "Any settlement or judgment resulting from a discrimination lawsuit would have to come from the State of Ohio treasury." (Kirkman Declaration, ¶13).

While the OLRS does receive funding also from the federal government, those funds are restricted, and may not be utilized as a source for paying a potential judgment in an employment discrimination lawsuit. (Kirkman Declaration, ¶10). The State clearly has "potential legal liability for a judgment" against OLRS, thereby satisfying this criterion.

### b. The language referencing the entity and degree of state control over the entity

The second *Lowe* criterion is the language referencing the entity and the degree of state control over it. That there is state control over OLRS is clearly established in the state statutes creating OLRS. Ohio Revised Code §5123.60 not only creates the OLRS but also specifies that there is to be created an Ohio Legal Rights Commission (appointed by state officials, as explained below), which Commission oversees and guides OLRS. O.R.C. §5123.60(D)(1), provides that the Commission was created

> for the purposes of appointing an administrator of the legal rights service, advising the administrator, assisting the administrator in developing a budget, advising the administrator in establishing and annually reviewing a strategic plan, creating a procedure for filing and determination of grievances against the legal rights service, and establishing general policy guidelines, including guidelines for the commencement of litigation, for the legal rights service.

4

Moreover, the statute provides that the administrator (Executive Director) of the OLRS, serves "at the pleasure of the commission." O.R.C. §5123.60(D)(5).

State law provisions establish additional control. For example, any rules promulgated by the administrator of OLRS are not to be "in conflict with rules adopted by the commission." O.R.C. §5123.60(F)(2). OLRS is required to follow all directives issued by the State's Department of Administrative Services and the State Office of Budget and Management. (Kirkman Declaration, ¶19) OLRS is audited by the Auditor of the State of Ohio, whose management letter specifies that, "The Ohio Legal Rights Service is part of the primary government of the State of Ohio." (Kirkman Declaration, ¶15). OLRS is charged with representing "persons detained, hospitalized, or institutionalized under [Chapter 5123] or Chapter 5122," and, accordingly, the statute declares it independent of the departments of mental health and the department of developmental disabilities and the office of the attorney general, as those departments may be opposing parties in litigation initiated by OLRS on behalf of those whose rights it is created to protect.

### c. Whether state or local officials appoint the entity's board members.

The Commission that oversees OLRS consists of seven members, all of whom are, by state statute, appointed by state officials. O.R.C. §5123.60(D)(2) provides that the Commission member who will serve as chair is to be appointed by the Chief Justice of the Ohio Supreme Court. Three members are appointed by the Ohio Speaker of the House and three by the President of the Ohio Senate.

### d. Whether the entity's functions are within the traditional purview of state or local government

In assessing whether the entity's functions are within the traditional purview of state or local governments, the *Lowe* court noted that while the Defendant in that case, Hamilton County

5

Department of Job & Family Services (HCJFS), was responsible for administering state and federal programs, "its basic function is to provide services to local residents." *Id.* at 331. In contrast, OLRS operates on a state-wide basis. See O.R.C. §5123.60 and attached Declaration of Mr. Kirkman (¶7).

This criterion hardly requires review as the reality is that OLRS does operate on a statewide basis—and its Commission is appointed by State officials. While it may be argued that either a local or state government could, potentially, operate a protection and advocacy system for persons with mental disabilities, there is no question that OLRS has "far more in common with a traditional state function than a local one." **Lowe** at 332, citing **Ernst v. Rising**, 427 F.3d 351, 364-65 (6th Cir. 2005) (en banc).

**3. Other support for a finding that OLRS is an arm of the state**

Plaintiff attempts to diminish the applicability of the finding in **Ohio Legal Rights Service v. The Buckeye Ranch, Inc.**, 365 F.Supp.2d 877 (2005), discussed in OLRS' Memorandum in Support of its Motion to Dismiss. In that case, this Court was called upon to address the status of OLRS in the context of a HIPAA matter in which the question was whether OLRS was a "health oversight agency." One of the requirements of the "health oversight agency" designation is that the entity be an agency of the United States, a state, or a political subdivision of a state. The court explained its determination that OLRS was a "health oversight agency" by first acknowledging that OLRS is a state agency ("Here, there is no dispute that OLRS, as a state agency created by O.R.C. §5123.60…."); the court went on to reason that "as a state agency . . . [OLRS] is either an arm of the State of Ohio or is a political subdivision of Ohio—under HIPAA, it does not matter which OLRS is." *Id.* at 891. As noted above, OLRS, without dispute, is not a "political subdivision." Accordingly, this Court's decision in **Buckeye Ranch** supports the obvious conclusion that OLRS is an arm of the State of Ohio.

Plaintiff also attempts to support her position by noting that Ohio Public Employee Retirement System (OPERS) was subject to suit under the ADA in *Evans v. Ohio Public Employee Retirement System*, Case No. 2:07-cv-1061 (S.D. Ohio Nov. 6, 2008). The decision in that case (which includes both Title I and Title II claims) is not supportive of Plaintiff's position. There is nothing in *Evans* to indicate OPERS asserted arm of the state status for Eleventh Amendment immunity purposes on the Title I claim. [2]

**4. Determination of Eleventh Amendment Immunity does not require discovery or a motion for summary judgment.**

Plaintiff urges the Court to refrain from making a determination as to immunity because no discovery has yet occurred on these issues and that the issue of Eleventh Amendment immunity must be raised in the context of a motion for summary judgment. Defendant disagrees with these propositions. State law, the support offered here from Mr. Kirkman's Declaration and the criteria set forth in *Lowe* all support a finding that OLRS is an arm of the state and, accordingly, entitled to Eleventh Amendment immunity from suit in federal court.

The Sixth Circuit has ruled that, when a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is accompanied by evidentiary support, "it is not converted into a motion for summary judgment." That court has further noted that in such cases, "the court is empowered to resolve factual disputes." See *Ernst v. Rising, supra*, in which the "primary issue joined by the parties is whether a government retirement system…is an 'arm of the state' or a 'political subdivision' of the State." *Id.* at 355.

---

[2] As the Sixth Circuit has recognized, federal courts have no obligation to raise an Eleventh Amendment issue on their own. See *Nair v. Oakland County Community Mental Health Authority,* 443 F.3d 469, 474 (6th Cir. 2006); *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 963 (6th Cir. 2002) ("we are not required to raise the issue of Eleventh Amendment immunity if the state has not done so").

**5. Claim for Punitive Damages**

Regarding OLRS' motion to dismiss Plaintiff's claim for punitive damages, Plaintiff concedes that if Ohio Legal Rights Service is an arm of the state or a governmental division of any kind, then punitive damages would not be available (Response in Opposition, p. 4). That OLRS is an arm of the state or a governmental division of any kind has been established above. The claim for punitive damages must be dismissed.

**Summary**

Ohio Legal Rights Service is arm of the state and, accordingly, entitled to Eleventh Amendment immunity from suit in federal court. Similar principles of sovereign immunity require Plaintiff to bring her state law claims in the Ohio Court of Claims. Accordingly, Plaintiff's claims under Title I of the ADA and under Ohio Revised Code §4112.01, as well as Plaintiff's claim for punitive damages, must be dismissed.

Respectfully submitted,

  /s/   **Wanda L. Carter**
Christopher E. Hogan, Trial Attorney  (0070236)
   chogan@nplmlaw.com
Wanda L. Carter                   (0021458)
   wcarter@nplmlaw.com
NEWHOUSE, PROPHATER, LETCHER
   & MOOTS, LLC
5025 Arlington Centre Blvd., Suite 400
Columbus, OH 43220
Telephone: 614-255-5441
Facsimile: 614-255-5446

Counsel for Defendant

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send such notification to:

Gary A. Reeve
Law Offices of Gary A. Reeve, LLC
513 East Rich Street, Suite 308
Columbus, Ohio 43215

                 <u>/s/ Wanda L. Carter</u>
                  Wanda L. Carter  (0021458)


J:\OPEN CLIENT FILES\OHIO LEGAL RIGHTS SERVICE (2441)\MOTDISMISSREPLY.DOC