**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JENNIFER E. SMITH,**

               **Plaintiff,**                        **Case No. 2:10-cv-1124**
                                                  **JUDGE GREGORY L. FROST**
      **v.**                                   **Magistrate Judge E.A. Preston Deavers**

**OHIO LEGAL RIGHTS SERVICE,**

               **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion to dismiss (ECF No. 3), Plaintiff's memorandum in opposition (ECF No. 6), and Defendant's reply memorandum (ECF No. 9). For the following reasons, this Court finds the motion well taken.

### I. Background

Plaintiff, Jennifer E. Smith, worked for Defendant, Ohio Legal Rights Service ("OLRS"), from May 18, 2009, until January 25, 2010. Plaintiff alleges that she was diagnosed prior to her employment with leaning- and memory-related disabilities. She also avers that her probationary period with OLRS should have ended on August 16, 2009, which would have made her a regular employee prior to her receipt of an August 19, 2009 document from her supervisor that described areas in which she needed to improve her job performance.

In November 2009, Plaintiff allegedly learned that her probation had been extended due to purported deficiencies in her work. Plaintiff asserts that she informed her supervisor that her disabilities caused some of the deficiencies and that she requested reasonable accommodations.

1

Plaintiff avers that in December 2009 she then presented her supervisor with a letter from her physician describing her disabilities and her treatment and presented OLRS' Human Resources Director with a document requesting reasonable accommodations.  The Human Resources Director met with Plaintiff on January 25, 2010, and allegedly expressed doubt over the accommodations sought and the asserted disabilities, as well as indicating that OLRS had not received a letter from Plaintiff's physician.  OLRS terminated Plaintiff's employment.

Plaintiff subsequently filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission.  After receiving a right to sue letter, Plaintiff initiated the instant action.  In a three-count Complaint, she asserts  federal claims for violation of the Rehabilitation Act of 1973, 29 U.S.C. § 705 *et seq.* (Count I) and violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count II), in addition to a state law claim for disability discrimination under Ohio Revised Code § 4112.01 and 4112.02 (Count III).  (ECF No. ¶¶ 18-40.)  OLRS has filed a motion to dismiss the second and third counts, as well as the request for punitive damages in connection with the Rehabilitation Act claim.  (ECF No. 3.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Defendant moves for dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction.  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ."  *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l*

2

*Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  *See also Rapier v. Union City Non-Ferrous, Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction").

Rule 12(b)(1) motions to dismiss based upon a lack of subject matter jurisdiction generally come in two varieties, either facial or factual attacks on the complaint.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004).  A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading.  *Id.*  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard employed under Rule 12(b)(6) motions to dismiss.  *Id.*  On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  *See also Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002).  As a result, this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

Under Rule 12(b)(2), Defendant may move for dismissal based on a lack of personal jurisdiction.  In ruling upon a Rule 12(b)(2) motion, a court has three alternatives: (1) it may make a determination based on written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; or (3) it may conduct an evidentiary hearing on the merits of the motion.  *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

3

Where the Court elects to rule on the matter based upon the pleadings and other documentary evidence, a plaintiff need only establish a *prima facie* case for jurisdiction.  *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003).  Although the Court considers the pleadings in a light most favorable to the plaintiff, that party must still set forth specific facts demonstrating that the Court has jurisdiction.  *Serras,* 875 F.2d at 1214.  If the facts support jurisdiction, the Court must deny the motion to dismiss even in the face of controverting evidence provided by the moving defendant.  *Id.*  The Sixth Circuit has explained that "any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff."  *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

Finally, Rule 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief.  This Court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable.  *Bell Atlantic*

4

*Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### B.  Analysis

OLRS argues that dismissal of Counts II and III is warranted because it is a state agency, which means that this Court lacks subject matter jurisdiction due to Eleventh Amendment immunity.  This Court agrees.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI.  "The States' immunity from suits in federal court applies to claims against a State by citizens of the same State as well as to claims against a State by citizens of another State." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Hans v. Louisiana*, 134 U.S. 1, 21 (1890); *Alden v. Maine*, 527 U.S. 706, 728 (1999); *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002)).  It is well settled that sovereign immunity applies to "state agents and instrumentalities," in addition to the states themselves.  *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 366 (6th Cir. 2008) (citing *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt,

however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit.").  Consequently, a state is immune from suit in federal court unless Congress abrogates the state's sovereign immunity, the state waives its sovereign immunity, or the suit is against a state official and seeks prospective injunctive and declaratory relief to end a continuing violation of federal law.  *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002).

If OLRS is an arm of the state, then dismissal of the Count II ADA claim is warranted. The United States Supreme Court has invalidated congressional abrogation of states' immunity for claims filed under Title I of the ADA.  *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001); *Gentry v. Summit Behavioral Healthcare*, 197 F. App'x 434, 437 (6th Cir. 2006).  Additionally, Ohio has not waived its sovereign immunity with respect to claims under Title I of the ADA.  The Sixth Circuit has held that Ohio Revised Code § 2743.02 acts only as a partial waiver of Ohio's sovereign immunity, explaining that

> it is equally clear that the consent to suit evidenced in [Ohio Revised Code § 2743.02] was limited to an action in the Ohio Court of Claims. The federal courts have consistently construed the extent of a state's waiver of immunity to be limited by the express terms of the waiver statute.  Thus, the fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts.  The Ohio bill here expressly permitted an action in the Ohio Court of Claims; it nowhere authorized a federal action.

*Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985) (internal citations omitted).  Therefore, Ohio retains its sovereign immunity with regard to claims filed under Title I of the ADA.

Similarly, if OLRS is a state agency, then sovereign immunity also bars the Count III disability discrimination claim under Chapter 4112 of the Ohio Revised Code from being tried in

6

federal court.  Another judicial officer in this Court has explained that although

> Ohio has waived its immunity from suit in state courts, *see* [Ohio Rev.Code] §
> 2743.02(A)(1), Ohio has not explicitly waived its immunity from suit in federal
> court.  *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985).
> Ohio's antidiscrimination statute similarly does not waive federal court immunity,
> as that statute simply authorizes a suit against the state as an employer in state court.
> [Ohio Rev.Code] § 4112.051(A)(1).

*Nair v. Columbus State Cmty. Coll.*, No. 2:02-cv-595, 2008 WL 483333, at *10 (S.D. Ohio Feb.19,

2008).

The extant question is thus the status of OLRS.  When considering whether an entity is an

arm of the state for purposes of the Eleventh Amendment, "the primary issue is whether the state

would ultimately be liable for any money judgment against the entity."  *Dubuc v. Mich. Bd. of

Law Examiners*, 342 F.3d 610, 615 (6th Cir. 2003) (citing *Brotherton v. Cleveland*, 173 F.3d

552, 560-61 (6th Cir. 1999)).  Courts also look to other factors, however, such as how state law

defines the entity and the degree of control the state maintains over the entity.  *Id.* (citing

*Brotherton*, 173 F.3d at 561).  Thus, as the parties agree, the relevant test directs this Court to

consider (1) the State of Ohio's potential legal liability for a judgment against OLRS; (2) the

language employed by state courts and state statutes to describe OLRS, as well as the degree of

control and veto power that the state has over OLRS; (3) whether state or local officials appoint

OLRS board members; and (4) whether OLRS's functions fall under the traditional purview of

state or local government.  *Lowe v. Hamilton County Dep't of Job & Family Servs.*, 610 F.3d

321, 325 (6th Cir. 2010).

To provide support for its meeting each of these factors, OLRS has submitted the

declaration of its Executive Director, Michael Kirkman.  (ECF No. 9-1.)  OLRS also directs this

Court to various statutory provisions and case law supporting its argument.

Having considered this material, the Court accepts that it appears that the any monetary judgment entered against OLRS would be paid by the state of Ohio.  OLRS cannot use any federal funds it obtains to pay for damages or settlements.  (ECF No. 9-1, Kirkman Decl. ¶ 10.) Instead, as the Kirkman Declaration indicates, "[a]ny settlement or judgment resulting from a discrimination lawsuit would have to come from the State of Ohio treasury."  (ECF No. 9-1, Kirkman Decl. ¶ 13.)  In analyzing this liability factor, this Court focuses on the state treasury's *potential* legal liability for the judgment, not on whether the state treasury *will* pay for any adverse judgment in this case.  *Lowe*, 610 F.3d at 325.  Ohio is thus potentially liable here, regardless of the merits.

The language employed by state statutes to describe OLRS, as well as the degree of control that the state has over OLRS, all support the conclusion that OLRS is an arm of the state. Also notable is that state, as opposed to local, officials appoint OLRS Commission.  Ohio Revised Code § 5123.60(A) creates the OLRS and does not limit its responsibilities to only a portion of the state or any locality.  Rather, as OLRS Executive Director Kirkman echoes in his declaration, the statute provides OLRS with a statewide scope.  (ECF No. 9-1, Kirkman Decl. ¶ 7.)  Section 5123.60(D) provides for a seven-member oversight commission with members appointed by the Chief Justice of the Ohio Supreme Court, three members appointed by the Speaker of the House of Representatives, and three members appointed by the President of the Senate.  Section 5123.60(F)(5) requires the OLRS administrator to prepare and submit the OLRS budget to the Ohio General Assembly, while § 5123.60(F)(7) requires the administrator to prepare and submit an annual report to Ohio's governor, chief justice of the state supreme court,

8

the president of the senate, the speaker of the house of representatives, the director of mental health, and the director of developmental disabilities.

It is also relevant that, according to the Kirkman Declaration, OLRS does not pay its vendors directly. Instead, the state exercises control over OLRS by having the Office of Budget and Management ("OBM") issue checks to vendors. (ECF No. 9-1, Kirkman Decl. ¶ 14.) The OBM also pays OLRS employees, who are subject to state employment rules and, depending upon an employee's position, state collective bargaining agreements. (ECF No. 9-1, Kirkman Decl. ¶¶ 17-19.) Additionally, the state auditor audits OLRS and describes the agency as "part of the primary government of the State of Ohio." (ECF No. 9-1, Kirkman Decl. ¶ 15 (internal quotation marks omitted).) OLRS must also follow all directives issued by the Ohio Department of Administrative Services and the OBM. (ECF No. 9-1, Kirkman Decl. ¶ 19.) Such facts support that Ohio exercises control OLRS and its employees as an instrumentality of the state.

Also favoring the arm of the state conclusion is language employed by another judicial officer in this District to describe OLRS, although this Court notes that the classification issue here was not the precise issue in that case. *See Ohio Legal Rights Serv. v. Buckeye Ranch, Inc.*, 365 F. Supp. 2d 877, 879-80, 883 (S.D. Ohio 2005) (initially describing OLRS as a state agency and noting statewide authority). The Court therefore recognizes *Buckeye Ranch* as lending some qualified but hardly dispositive support to OLRS's position.

Finally, the Court recognizes that OLRS's functions fall under the traditional purview of state as opposed to local government. OLRS' statewide scope of operations as opposed to the more localized operations involved, for example, in *Lowe v. Hamilton County Department of Job and Family Services*, 610 F.3d 321, point to state and not political subdivision responsibilities.

9

Plaintiff argues that the immunity issue is one for summary judgment and not a matter that this Court can decide under Rule 12.  She posits that discovery is warranted, but fails to offer what she would do beyond testing OLRS's asserted factual representations.  It is notable that OLRS offered the Kirkman Declaration in response to Plaintiff's response to the far more Spartan facts argued in the motion to dismiss and its supporting memorandum and that Plaintiff did not file a motion for leave to file a sur-reply and evidence contrary to OLRS's facts.

The Eleventh Amendment renders states immune from suits for monetary damages in federal court brought by private citizens.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  This immunity extends to state agencies functioning as an arm of the state.  *Alabama*, 438 U.S. at 782.  Thus, because the evidence indicates that OLRS is in fact an arm of the state and because  a suit against an arm of the state is a suit against the state subject to the Eleventh Amendment prohibition, this Court lacks jurisdiction over Counts II and III.  *See Begun v. Ohio State Med. Bd.*, 872 F.2d 1023, 1989 WL 34047, at *1 (6th Cir. 1989) (unpublished table decision).

This leaves OLRS's argument that the punitive damages component of Count I also warrants dismissal.  Plaintiff indeed seeks punitive damages under the Count I Rehabilitation Act claim.  (ECF No. 1 ¶ 25.)  This aspect of the claim is not plausible because the United States Supreme Court has held that "punitive damages . . . may not be awarded in suits brought under . . . § 504 of the Rehabilitation Act."  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  Although contesting OLRS's proof of its status, Plaintiff does concede in her briefing that "if OLRS is an 'arm of the state,' or a governmental division of any kind, then punitive damages would not be available."  (ECF No. 6, at 4.)  Dismissal of the punitive damages component of Count I is also

appropriate.

### III.  Conclusion

The Court **GRANTS** Defendant's motion to dismiss.  (ECF No. 3.)  This Court

**DISMISSES** Counts II and III, as well as the punitive damages component of Count I.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
